Okay, the next argued case is number 18-2031, Mayo Foundation v. Iancu. Mr. Davis. Thank you, Your Honors. Good morning, and may it please the Court, I'm Ed Davis from Fish and Richardson on behalf of Mayo. In this case, the continued examination that Mayo requested was complete when the examiner indicated that the claims were allowable and the Board of Interference has declared the interference in 2014. We did make the suggestion for the interference. That's correct, Judge Davis. At the point that the interference was declared consistent with the regulation at 37 TFR 41.102, examination had been completed and at least one claim had been found patentable but for the interference. The patent office here and the district court thereafter improperly charged the post-interference time to Mayo. And in so doing, they ignored the broader principles that were announced, that was announced in Novartis, that after claims are deemed allowable, the additional time for B delay is chargeable to the PTO. But 703B1 talks about ending on the date of mailing of the notice of allowance. And that time was properly subtracted there. It, 701, 703B1 does, Judge Lurie, speak specifically to that time. That statute was, excuse me, that regulation was amended after this court's Novartis decision. And in pertinent part, during the rulemaking, there was a comment that was made. It was comment number two we cited in our brief where the commenter noted that it would be unfair under that statute to count the time, any time after the notice is issued if it is reopened for any reason that would be chargeable to the Patent and Trademark Office. The Patent and Trademark Office recognized that and clarified that any time that was reopened as a part of the process that was chargeable to the PTO still would not be counted towards the applicant's time. And I raise that point, Your Honor, just to note that although the statute, the regulation does say that, even the Patent Office itself has recognized that in certain circumstances it would be appropriate after a notice of allowance has been issued to reopen and then charge that time back to the Patent Office. The district court here, in effect, in our view, engaged in an example of exalting form over substance. As we read the Novartis decision that I recognize two of the three members of this panel were on that panel as well, the court determined that it was not when the patent issued, but when the notice of allowance was first mailed, that the time was cut off. And so we view this as a case in which merely there is an application of the broader principle of Novartis and the analogies in this case mirror those in Novartis quite closely. The PTO regulations say, again, that examination is to be completed before the file goes to the Board of Patent Appeals and Interferences and an interference is declared. Once that interference is declared, the board takes over sole jurisdiction over the file and the examiner may not act unless specifically directed to by the board. The MPEP, which we recognize... The board did not, or the PTO did not charge you with the time between the notice of allowance and issuance, which would be contrary to Novartis, right? That's correct. It did not charge us for that time. So why doesn't Novartis stand for the proposition that you should be charged with the time before the notice of allowance since that's what happened? I'm sorry, did you ask that again? Why doesn't Novartis stand for the proposition that you should be charged with the delay before the notice of allowance, which is what the Novartis allowed? Your Honor, I think that Novartis stands for the proposition that the applicant should not be charged for any time once it is clear that the application process is complete. And in this particular instance, the request for continued examination that was requested by the applicant has been completed. Well, Novartis talks about allowance and that occurs with the notice of allowance. That is correct. We would suggest, just Lori, that a notice of allowance is a specific document that is issued by the patent office to indicate that the claims have been allowed. You're contesting now the period between the termination of the interference and the notice of allowance. That's correct. And that was a consequence of the continuation application examination that you requested. We did request a continuation examination, but we would suggest that the time up to the institution, the declaration of the interference, is in fact what it is that Mayo actually requested. Because at that point, pursuant to the patent office's own regulations, the claims that were at issue were deemed allowable. And the only issue that precluded those claims being allowed was the interference itself. And what about section of statute 151B1V, double I, talking about actually an interference? So that time had to have been deducted. It did, and that time, as I understand it, Your Honor, the time for the interference itself is already deducted as a part of C delay. And I don't think there's any dispute between the parties that the time for the interference was to be deducted improperly. So, but at the point that the interference ended, having already concluded as a necessary predicate to instituting the interference in the first place, that the claims were allowable, that But your problem is that the PTO rules provide for continued examination after the termination of the interference and before the notice of allowance, right? Well, they do allow for the examiner to do something. In addition, I'm not sure I would say that it's continuing because that is a distinction between what the applicants requested and what the PTO on its own may agree to do. We don't take any issue with the fact that the examiner in this instance, after the Board of Patent Appeals and Interferences returned the file to the examiner, that the examiner decided to do another search. The examiner was perfectly entitled to do that. That was routine, right? That's routine post-interference. I understand that the government has said that in their brief, but we don't have any evidence that that is routine post-interference. And in fact, we think the facts of this case are a unique example of why the government's position is not routine at all. What happened here, Judge Lurie, is that earlier on in the application process for what ultimately became the 063 patent, the examiner at the time issued a restriction requirement. And Mayo, in response to that restriction requirement, elected certain claims. Those were the claims that ultimately ended up in the interference. Meanwhile, on a separate track, the very claims that the examiner had required Mayo to issue the restriction about were filed in a different application and ultimately issued as a patent, the 927 patent. And it was those claims, that patent, which a new examiner, after the interference had concluded and Mayo was declared to have prevailed, those were the claims that were ultimately subject to the double patenting rejection. And so the board itself could have instructed the examiner to reopen, not continue, but reopen in the words of the MPEP examination, but it did not do that. The MPEP says that the examiner may reopen, and so that was a decision that the examiner made on her own, the new examiner. She rejected the claims on a double patenting rejection based. In any event, all of this was before the notice of allowance, which was the key date. It is absolutely correct that it was before the notice of allowance. We want to suggest that the notice of allowance is a key date. You're saying there was, in effect, an allowance before the grant of the notice of allowance. I'm saying that the claims were deemed allowable and that the declaration of- Which is different from Novartis. It is different from Novartis on Novartis's facts, but we believe that Novartis expressed a broader principle, that Novartis, as we see it, wasn't definitively saying that it is the notice of allowance and only the notice of allowance that determines when prosecution has closed. In the language of Novartis itself, Judge Lurie even says that it's the presumptive end. We would suggest that in this case, the presumptive end of prosecution in this matter was earlier. That, in effect, what happened here was at the close of the interference, the examiner opted to reopen examination, conduct an additional search, issued the double patenting rejection. Then when Mayo responded, the double patenting rejection was withdrawn. I'll note also that there's no dispute between the government and Mayo that during that time period, Mayo did ask for a one-month extension to respond. That time was counted towards applicant delay. There was nothing that occurred after the interference was completed that was duly chargeable to Mayo in its activities. One additional point that I would make that I think the government took issue with in its brief is that we find ourselves in a position here where, but for the request for continuing examination, the outcome would have been different. I think even the government agrees with that, and that is that had the suggestion for an interference taken place during the initial application and pendency of the prosecution before the request for continued examination was made, and then everything else occurred exactly the same, and that ultimately the interference had been found in Mayo's favor, the time after that interference under the regulations would have been counted towards the government, and I don't think there's a dispute that Mayo would be entitled to PTA in that instance. And so the fact here that Mayo made a request for a continued examination... Does it make a difference that it resulted from a request for continued examination? That would seem to be contrary to statute, though. Well, I do think it makes a difference only in the sense that the statute itself and the implementing regulations say that the time that is counted against Mayo is only the time related to the request that Mayo made. In this instance, the request that Mayo made for continuing examination was that the patent be determined to be allowable. That happened when the board issued the declaration of interference. Okay. Let's hear from the director. Thank you, Mr. Davis. Mr. McOtter. Thank you, Your Honor. Trim McOtter, assistant United States attorney on behalf of the PTO director. In our view, the bright-line rule established by Novartis controls here. The court in Novartis held that continued examination requested by the applicant is the time up until the mailing of the notice of allowance. On page 602 of that opinion, twice it uses the phrase mailing of the allowance, and there's no dispute between the parties. That's what the PTO did here. That, in our view, should end the case. Now, Mayo claims that Novartis announced a broader principle. There's no evidence of that in Novartis itself, but even if there were, the principle of Novartis would be that continued examination requested by the applicant ends when the application permanently moves from a substantive review to a more ministerial clerical review, like the publication office, as was the case in Novartis. Here, that certainly did not happen with the interference.  That's when the notice of allowance is mailed, John. That's exactly what Novartis said. That certainly did not happen at the time the interference was declared. There were another two and a half years or so of substantive review after that period. And as Judge Ellis held below, it's quite common for this examination to continue after the interference. It's essentially required. Mayo's not entitled to a patent as soon as the interference ends. The examiner has to look at the state of the art at the time the interference has ended to determine whether a patent should issue. And Mayo, I think, acknowledges several times in their brief that, in fact, examination did occur well after the declaration of interference. Mayo pivots by arguing that that time was not actually requested by Mayo. But, of course, the only reason we had interference in the attenuating examination afterwards was because Mayo filed an RCE asking for an interference. And further, that RCE remained pending this entire time, all the way through interference, all the way through the examination afterwards, up until the allowance was mailed. There are only two ways to end an RCE. Either the notice of allowance gets mailed or the application is rejected, finally, and abandoned. Obviously, neither of those happen during the relevant time period. I think, in a way, even Mayo agrees. Its opening brief at page 15, when it's describing the court's decision in Novartis, said, quote, the applicant's continued examination request is responsible for all the time up until allowance, end quote. And so, in our view, that shows that entire time period, up until the mailing, was, in fact, Mayo's responsibility. They're just disagreeing as to what allowance means. Correct, Your Honor. But, again, as we said, Novartis doesn't have any indication of that. And Novartis expressly referred to the mailing of the allowance. And there are key distinctions between mere allowability solely for purposes of kicking the application into the interference process, which is what happened here and under the reg that Mr. Davis cites, as opposed to actual allowance. And those key differences are ones that Novartis itself addressed, i.e., whether examination is likely to continue after that point, Your Honor. And I do think, finally, it's worth pointing out that for purposes of A delay, time running against the PTO for responding, Mayo agreed that the RCE was pending well after the interference itself ended. So, Mayo seems to be arguing that the RCE was pending for purposes of A delay, but yet it wasn't pending for purposes of B delay. And so both of the statutory requirements are met here. There was, in fact, continued examination well after the declaration of interference. And all of that time is attributable to Mayo's RCE. And that's why the time can't count as B delay, Your Honors. As Judge Ellis addressed in his decision, if the court were to adopt Mayo's position, there would be absurd results. There would be very difficult, pragmatic results. I won't go into all of them. Our brief lays out several. Judge Ellis himself laid out several. And, again, that's why we think that the bright line rule established by Novartis was so important. And it makes perfect sense, both in Novartis and in this case, Your Honor, to draw that line when the notice of allowance was mailed and not before. If the court has no further questions. We respectfully request the court affirm. Thank you. Thank you, Your Honor. Mr. Davis. Yes, just briefly in response. Mr. McOtter said that it's clear that Mayo is not entitled to a patent after the declaration of interference. It is also true that Mayo is not necessarily entitled to a patent merely when the notice of allowance issues. That is a point in time in which the file moves to another area of the patent office. But the notice of allowance itself, on its face, says that the patent office, on its own, or in response to a request from the applicant, can reopen prosecution. And if it does so, that is time that is not charitable to the applicant. Judge Ellis, and again, in the government's brief, argues that what is proposed by Mayo in this place would lead to observed results. But the example that I believe Judge Ellis gave, that the government repeats in its brief, is an example where an examiner indicates that claims are allowable over the phone. And so there's no written record, and that could lead to all kinds of difficult and challenging results. And that's not Mayo's position here. Mayo's position here is there needs to be some sort of clear, written indication that, as far as the patent office is concerned, that the claims are effectively deemed allowable. And our position is that here, in this case, that is when the declaration for interference was served on the parties. Just very briefly, the MPEP itself says that if there's a recommendation for further action after the interference, then the examiner must reopen prosecution. But if not, such as the case here, the examiner may reopen prosecution. And so the PTO itself recognizes that prosecution and examination had closed on those claims before the interference, but allows that prosecution to be reopened after the interference, much in the same way that the PTO on its own can reopen prosecution after the notice of allowance. And so in the end, we would say that there's no doubt that the notice of allowance itself is one period at which a bright line can be drawn, but that is not the only bright line that can be drawn, and that there are particular instances of which this is one where it's clear from the PTO's regulations and its implementing practices that an earlier date is appropriate. So we would ask this court respectfully to reverse the decision of the district court. Thank you. Thank you. Thank you both. The case is taken under submission.